FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 17 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RICARDO SHARK,

                                Plaintiff,

- against -

CITY OF NEW YORK and HUMAN
RESOURCES ADMINISTRATION,

                                Defendants.
----------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-05350 (CBA) (LB)

AMON, Chief United States District Judge.

Plaintiff Ricardo Shark, proceeding pro se, commenced this action against the City of New York, Human Resources Administration on October 26, 2011. He alleges that the Human Resources Administration ("HRA") and the City of New York unlawfully terminated his employment on the basis of race, gender, national origin, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 et seq. He also claims, on the same discriminatory grounds, that defendants' conduct subjected him to unequal terms and conditions of employment. (DE #1.) On September 7, 2012, defendants moved to dismiss the case on timeliness and exhaustion grounds. (DE #13.) For the following reasons, the Court grants defendants' motion to dismiss.

**BACKGROUND**

In January 1996, Shark, a 51-year-old African American male, began his employment at the HRA as a Fraud Investigator and was subsequently promoted to a Supervising Investigator in 2002. (Compl., Attach. 2 ¶ 2.) Shark alleges that Audi Tadros and Micahel Edgemeyer, individuals who were both younger than he and who became his supervisors in 2002, "harassed

1

[him] with petty write ups" and with daily meetings that were "supposed to be for the purpose of checking [his] work but, were really meant to harass [him]." (Id. ¶ 3.) He alleges further that Deputy Director Robert Giovanelli, who is white and 40 years old, "wrote [him] up on various charges including drunkenness at work and incompetence on the job," charges that Shark denied and grieved with his Union. (Id. ¶ 5.) He also claims that he was given fewer investigators to supervise than the other Supervising Investigators, which left him "idle for a majority of the work day." (Id. ¶ 4.)

On November 16, 2009, in order to resolve the various charges against him, Shark entered into a Stipulation of Settlement with the HRA. Under the terms of the settlement, Shark agreed to accept a fifteen day pay fine and an eighteen-month term of probation. (Compl., Attach. 4, Ex. 1 ¶¶ 1-2.) The settlement also provided that if Shark engaged in "misconduct consistent with the charges and specifications specified in the pending charges," the HRA in its "sole discretion, which shall not be arbitrary and capricious," could terminate him. (Id. ¶ 3.)

On April 5, 2010, the HRA terminated Shark's employment for failing to pay the agreed fine even though, Shark alleges, the fine was to be deducted automatically from his paychecks and he was given no warning that he was in arrears. (See Compl., Attach. 2 ¶ 7.) Believing, as a result, that his termination for fine arrears was "an arbitrary and capricious pretext to terminate [him]," Shark initiated a complaint with the New York State Division of Human Rights ("NYSDHR"), which he duly filed with the Equal Employment Opportunity Commission ("EEOC"), on February 7, 2011. (Id. ¶ 8.) In addition to the foregoing facts, Shark alleged that "[o]f the ten Supervising Investigators in [his] section, [he] was one of the oldest" and "one of only three African American Supervising Investigators in [his] section." He asserted further that after he was terminated, the HRA "hired new, younger Supervisors." (Id. ¶ 9.) Based on these

allegations, Shark claimed that the HRA "terminated [him] because [he is] a Black American and 51 years of age." (Id. ¶ 9.) The EEOC issued a right to sue letter with respect to this complaint on July 27, 2011. (Compl., Attach. 1.) Shark subsequently initiated the instant action, incorporating the allegations in his NYSDHR complaint, on October 26, 2011.

On April 25, 2012, defendants served on Shark a motion to dismiss his complaint on timeliness and exhaustion grounds. (DE #5.) On May 14, 2012, the Court granted Shark's request for an extension of time until May 31, 2012 to respond to defendants' motion. (DE #8.) On June 4, 2012, the Court granted Shark a second extension of time to respond until June 11, 2012. Two months later, on August 10, 2012, defendants wrote to the Court stating that Shark had not yet served them with any opposition to their motion to dismiss and requested that the motion be considered unopposed. (DE #11.) On August 16, 2012, the Court ordered that if Shark did not respond to defendants' motion to dismiss by August 31, 2012, the Court would consider the motion unopposed and that defendants should then file their motion and brief on the electronic docket by September 7, 2012. (DE #13.) Shark did not respond by August 31, 2012, and defendants subsequently filed their motion and brief on September 7, 2012. (DE #14.) Although Shark missed the August 31, 2012 deadline to respond, he nevertheless filed an opposition to defendants' motion also on September 7, 2012. (DE #15.)

## DISCUSSION

As an initial matter, the Court notes that Shark failed to respond to defendants' motion to dismiss by the deadline set forth in the Court's August 16, 2012 Order after already missing the deadline to respond that the Court had set previously after granting two extensions. The Court's Order made clear that if Shark did not respond to defendants' motion to dismiss by August 31, 2012, the Court would consider the motion unopposed. Despite this warning and his repeated

delays in filing, Shark's opposition papers did not include any explanation for his tardiness. Under these circumstances, it is not clear that the Court need even consider Shark's late submission in evaluating defendants' motion to dismiss. See Buscemi v. Pepsico, Inc., No. 86 Civ. 6382, 1989 WL 31685, at *1 n.1 (E.D.N.Y. Mar. 27, 1989) (disregarding late submissions where party "offer[ed] no excuse other than oversight for its late filing"); cf. World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 160 (2d Cir. 2012) (noting "most critically" that plaintiff had no notice of the possible consequence of late filing in reversing district court's decision to strike the late filing).

In any event, even taking into account Shark's late submission, the Court finds that Shark's claims are time-barred. Under the administrative exhaustion provisions of both Title VII and the ADEA, before filing suit, a plaintiff in New York must file a charge with the EEOC within 300 days of the discriminatory act, or within thirty days after receiving notice that the state or local agency has terminated its processing of the charge, whichever is earlier. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). "A claim is time barred if it is not filed within these limits." Nat'l R.R. Passenger Corp. v Morgan, 536 U.S. 101, 109 (2002); see also McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010); Manello v. Nationwide Mut. Ins. Co., No. 11-CV00243, 2012 WL 3861235, at *6 (E.D.N.Y. Sept. 4, 2012).

Shark's claims arise mainly out of a discrete allegedly discriminatory act—his termination—that occurred on April 5, 2010 when the HRA terminated his employment. For claims based on this act, Shark thus had until January 31, 2011—the first weekday following the 300-day period from the date of his termination—to file a charge with the EEOC. See McGullam, 609 F.3d at 75 ("With respect to claims based on 'termination, failure to promote, denial of transfer, or refusal to hire,' section '2000e-5(e)(1) precludes recovery for discrete acts

of discrimination or retaliation that occur outside the statutory time period' . . . ." (internal citations omitted)); Flaherty v. Metromail Corp., 235 F. 133, 137 (2d Cir. 2000) (in case alleging discriminatory discharge under Title VII and ADEA, noting that "the limitations period begins to run on the date that the employer gives definite notice of that decision to the employee"). Shark, however, did not file his EEOC charge until February 7, 2011, seven days after the limitations period had ended, a fact that Shark does not dispute. Shark's late submission, which cursorily asserts only that his EEOC charge was timely filed, offers no basis for altering this calculation. Accordingly, all of his claims, including those arising out his termination as well as those related to the terms and conditions of employment, which ended when his employment did, fall outside the limitations period. The Court therefore dismisses Shark's claims as time-barred.

## CONCLUSION

For the foregoing reasons, the case is hereby dismissed. The Clerk of Court is instructed to enter judgment in favor of defendants and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
December 17, 2012

/S/ Chief Judge Carol B. Amon
Carol Bagley Amon
Chief United States District Judge